GALVESTON INDEPENDENT SCHOOL DISTRICT et al., Appellants,

v.

Robert R. BOOTHE et ux., Individually and as next friends of their son, David Boothe, Appellees.

No. 17482.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Oct. 4, 1979.

Rehearing Denied Nov. 1, 1979.

Ed Schwab, III, Galveston, for appellants.

Dibrell, Dibrell, Greer & Brown, G. William Rider, Galveston, for appellees.

PEDEN, Justice.

Galveston Independent School District and its Board of Trustees and others appeal from a judgment setting aside the expulsion of David Boothe (based on alleged possession of marijuana near the school) and enjoining the district from either expelling him from school or penalizing him for his absence from school resulting from the expulsion. The trial court found the expulsion void (1) because the school board's rule that he was expelled for violating did not fairly apprise him that he could be expelled for possessing marijuana off the school grounds, and (2) because procedural requirements of the rule were not followed in carrying out the expulsion. We affirm.

Before his first class one morning, David Boothe was sitting in an automobile parked on a street adjacent to the school campus. Mr. Johnson, an employee of the district, approached the car and noticed a bag resting on the console. David admitted owning it. He later told his father it contained marijuana and the parties have stipulated that it did. The amount was one-fourteenth of an ounce. Because of this incident, the assistant principal sent this letter to David's parents:

Dear Mr. & Mrs. Boothe:

I must inform you with regret of my recommendation to the Galveston School Board of Trustees, that your son, David Boothe, age 16, be expelled from Ball High School for the second quarter of the 1978-79 school year.

Alleged possession of marijuana necessitates taking this action.

I am obligated to inform you that you may appeal this decision. . . .

David's parents appealed the recommended expulsion to the school board, but, after a hearing before the board, David was ordered expelled for one quarter of the 1978-1979 school year.

In their first point of error, the appellants assert that the trial court erred in reaching the conclusion of law that the school board's expulsion of David was void "because it was not authorized by Section 21.03 of the Texas Education Code for the reasons that the pertinent school rules and regulations were not specific enough to apprise him of the nature of the conduct proscribed and that the Board of Trustees did not properly apply said rules and regulations."

There is no Sec. 21.03 of the Texas Education Code, and the trial court's conclusion did not use that number; we presume the appellants meant to refer to Sec. 23.26.

The trial court's conclusion of law complained about in the first point of error was:

I. NO STATUTORY AUTHORITY TO EXPEL

The expulsion of David Boothe is void and unenforceable because it was done without statutory authority and therefore, violated David Boothe's right to a free education under Texas Constitution Article IV [VII], as implemented by Texas Education Code Section 21.301.

The only sources of statutory authority for a Board of Trustees to expel a student are Texas Education Code Section 23.26 which authorizes expulsion where the Board of Trustees has promulgated a rule, regulation or policy covering the actor conduct for which the student is being expelled, and Texas Education

Code Section 21.301 which authorizes expulsion for incorrigible conduct.

The expulsion of David Boothe was not authorized by Texas Education Code Section 21.301 because he was not expelled for incorrigible behavior.

The Board of Trustees has authority under Texas Education Code Section 23.26 to expel a student pursuant to a promulgated rule only if the rule fairly apprises the student of the prohibited conduct for which he may be expelled and only if it actually follows the rule it has promulgated in advance of the conduct.

The expulsion of David Boothe was not authorized by Texas Education Code Section 23.26 because the rule for which he was expelled did not fairly apprise him of the act of conduct for which he was subject to expulsion and because the Board of Trustees did not actually follow the promulgated rule on which his expulsion was purportedly based.

The Texas Controlled Substances Act Article 4476–15 and the Federal Drug Abuse Prevention Control Act 21 U.S.C. Section 802 do not classify marijuana as a narcotic drug.

Section 23.26(d) of the Texas Education Code provides that "[t]he trustees may adopt such rules, regulations, and by-laws as they may deem proper."

Justice C. L. Ray, writing for the court in *Texarkana Independent School District v. Lewis,* 470 S.W.2d 727, 733 (Tex.Civ.App. 1971, no writ), held:

> While the Board of Trustees has ample authority to suspend or expel students, "it is without authority to suspend a student for any act or conduct, unless, prior thereto, the Board has promulgated a rule, regulation or policy generally covering such act or conduct for which the student is subject to being suspended, or unless the act or conduct constituted incorrigible conduct in violation of this Article. (Article 2904, Vernon's Ann. Revised Civil Statutes, now Sec. 21.301, Tex. Education Code). Such rule, regulation or policy may be informal, preferably written but may be verbal, so long as it

fairly apprises the student of the type of prohibited conduct for which he may be suspended from school." Opinion of the Attorney General 1969, No. M–395.

In our case, the Board of Trustees of the Galveston Independent School District has promulgated rules and regulations governing the conduct of students in the Galveston schools and carefully distributed them in a student-parent handbook at the beginning of each school year. This handbook contains rules, policies and regulations relating to expulsion and to the possession of marijuana. The school district's Policy 5114 and its corresponding regulation provide in pertinent part:

> Expulsion—The board will expel pupils from school for misconduct when other means of correction fail to bring about proper conduct. When a school principal (or his designee) finds it necessary to recommend to the board that a student be expelled from school, a letter shall be sent by certified mail informing the parent (guardian) of this expulsion, and will include a report of the measures taken by the administration and by the teachers in trying to bring about proper conduct on the part of the student . . .

> \* \* \* \* \* \*

> b) *EXPULSION*: All alternatives will be exhausted before any student is recommended for expulsion. Once a principal or his designee finds it necessary to exclude a student from a school campus, he may either:

> 1) Recommend immediate expulsion. A *certified* letter will be sent to the parents or guardians and all infractions necessitating the expulsion listed, including a report of measures taken to bring about acceptable behavior on the part of the student. Immediate expulsion will normally be limited to major rule infractions, physical assault, and/or alleged possession of or under the influence of alcohol or drugs. The parents or guardians will be given a copy of the appeal procedures. All students recommended for expulsion must be presented to the Board for their approval.

2) Recommend assignment to Guidance Center . . .

The "Discipline Section" of the district's student-parent handbook states: "Expulsion—Administrative action will be taken in cases where students perform asocial acts or are suspected of statutory infractions . . . ," while the section entitled "Assignment of Demerits/Penalties" lists the penalty for the offense of being "under the influence and/or possession of drugs" as simply "expulsion."

Mr. James Watson, principal of Ball High School, testified that in addition to receiving the handbook the students received verbal instructions and admonitions. Each homeroom teacher went over the handbook with the students in his class. Mr. Dillon, in charge of Human Relations and Security, visited each physical education class and spoke to the students on the dangers of drugs, the importance of adhering to the school's policies, and the problems they would face if they broke the rules. Mr. Watson further admonished the students over the public address system "not to bring marijuana on the campus." Mr. Watson testified that "I said the term marijuana specifically on the P.A. system on two occasions that I can recall, because of the dangers involved and because of the seemingly increased usage and possession of it on the campus."

We agree with the appellees that although the School Board had enacted rules and regulations concerning marijuana possession and expulsion, the district failed to follow them in this case. It appears that the expulsion was not made pursuant to any rule or regulation promulgated by the Board. First, the district's policies clearly state "[t]he board will expel pupils from school for misconduct when other means of correction fail to bring about proper conduct." No alternate means of correction were attempted in David's case. Second, the letter sent to David's parents failed to comply with the provision in regulation 5114 that the letter informing the parent (guardian) of an expulsion "will include a report of the measures taken by the administration and by the teachers in trying to bring about proper conduct on the part of the student . . . ." The word "will" is a word of certainty while the word "may" is one of speculation and uncertainty. *McElroy v. Luster,* 254 S.W.2d 893, 896 (Tex.Civ. App.1953, writ ref.); *Airline Motor Coaches v. Guidry,* 241 S.W.2d 203, 209 (Tex.Civ. App.1950, writ ref. n. r. e.). The letter received by David's parents did not "include a report of the measures taken . . . in trying to bring about proper conduct on the part" of David. By utilizing the word "will" in its guideline, the school district is required to include such a report.

Further, David's possession of marijuana was not on the school proper but was in a car parked on an adjacent street. David was verbally warned "not to bring marijuana on the campus," but it has not been shown that possessing marijuana in a car parked on an adjacent street is "on campus." The administrative regulations indicate that the place where possession of marijuana is prohibited is "in our schools." Administrative regulation 5114, which was passed pursuant to School Board policy and approved by the Board, contains this provision:

*Suspension and Expulsion* :

1) Administrative action will be taken in cases where students perform asocial acts or are suspected of statutory infractions. Examples of behavior that will not be tolerated *in our schools* are: (emphasis added)

   a) . . .

   b) . . .

   c) . . .

   d) Alleged possession of or under the influence of alcohol or drugs;

   e) . . .

   f) . . .

Mr. Watson testified:

. . . our campus actually takes in maybe eight or nine blocks. There is a passage of kids to and from north to south over private property as well as school property. Our campus is considered to be quite large. There is no stepping off of a curb in our opinion and

onto property that is not that of G.I.S.D. We have signs posted that anyone within five hundred feet of the campus, that that is considered campus in our opinion, and we have used this term for years.

The student handbook in the section devoted to security rules contains two definitions of "school property" but they appear to apply to other charges. "School property," when dealing with loitering shall "include the grounds of any public school and any grounds or buildings used for school sponsored activities or assemblies." When the offense is disruption of class, the area covered is expanded to include public property within 500 feet of school property. "Public property" is defined as "any street, highway, alley, public park or sidewalk."

There is no evidence that David was acting disruptively; consequently, the 500 foot extension to "school property" would not apply. David did not bring marijuana "on the campus" as defined by the student handbook, and the School District did not by signs (described by Mr. Watson) alone fairly apprise the students that they could be expelled for possession of marijuana off the campus. In *Texarkana Independent School District v. Lewis, supra,* the court, citing *Jones v. State Board of Education,* 279 F.Supp. 190, 200 (M.D.Tenn.1968) and *Scoggin v. Lincoln University,* 291 F.Supp. 161, 172 (W.D.Mo.1968), held at page 737 that "[t]here can be no discipline imposed except on the basis of substantial evidence of a violation of one or more specific rules or policies of the school."

■ In their second point of error the appellants maintain that the trial court erred in concluding that David's expulsion was void and unenforceable because it was based on a vague and indefinite rule which contravened his right to due process under the United States Constitution.

They argue that the "vagueness doctrine" is applied only to criminal statutes and to cases involving infringement on basic constitutional rights and is not applicable to student disciplinary matters.

We disagree and are in accord with the holding already cited in *Texarkana Independent School District v. Lewis, supra,* that before a student can be punished by expulsion for violation of a school rule, regulation, or policy, such rule, regulation, or policy must fairly apprise him of the type of prohibited conduct for which he may be expelled.

David was presented with a number of rules and regulations, but they did not fairly notify him that expulsion could result from his possessing marijuana on a street adjacent to the campus. It was made clear that the students were not to bring marijuana "on campus" but not that "on campus" means within 500 feet of the school grounds, regardless of the offense involved.

In point of error 3, the appellants contend that the trial court erred in concluding that David's expulsion was based on an unconstitutionally unreasonable rule. Our rulings on the first two points of error make it unnecessary for us to consider this point.

■ The appellants' fifth point is that enjoining the district from expelling David constituted an unlawful interference with the board's discretionary powers. It is not the role of the court to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. *Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975). However, we agree with the trial court's conclusion in our case that the school board's action was without the district's grant of discretionary power, and we cannot say the trial court's injunction was improper.

■ The appellants assert in point of error 4 that the trial court erred in making a conclusion of law that David's expulsion was void and unenforceable because it was not preceded by an adequate hearing as required by due process of law. After making that conclusion of law the trial court stated:

The Fourteenth Amendment to the Constitution requires the expulsion of a student be preceded by a hearing at

which there is an independent consideration of the student's prior conduct and other mitigating circumstances.

The transcript of David's hearing before the school board was admitted in evidence in the trial court "for the limited purposes of proving that there was a hearing, proving the result and establishing a record as to the hearing." Due process requires that at the very minimum a student facing suspension must be given some type of notice and afforded some kind of hearing. When the suspension is to exceed ten days, formal procedures may be required. *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

We sustain this point. Regardless of whether procedural due process requires that the expulsion of a student be preceded by a hearing at which there is an independent consideration of his prior conduct and other mitigating circumstances, we find that at the hearing before the School Board, David, who was represented by counsel, was not denied an opportunity to present evidence of his prior conduct or of any mitigating circumstances. In fact, some evidence was offered as to those aspects of the case.

The appellants' sixth point of error is that there was no evidence or, alternatively, insufficient evidence to support the trial court's granting a permanent injunction. The appellants maintain that some 34 findings of fact are without support in the record. We consider that only four findings of fact (Nos. 10, 11, 16 and 43) were without sufficient support, but this is of no consequence, for none of these four findings bears on the issue of the school district's failure to follow its own rule or on the vagueness of the school's regulations.

In their final point, the appellants complain that the trial court's judgment grants relief not prayed for, is more restrictive and comprehensive than justified by the appellees' pleadings and proof, and fails to describe the acts restrained with sufficient particularity. We find no merit in this contention. The appellees' trial pleadings are quite detailed and support the relief granted. Further, the appellants have not complied with the briefing requirements of Rule 418, paragraph (e), T.R.C.P. We overrule this point.

The judgment of the trial court is affirmed.

EVANS and WARREN, JJ., also sitting.