**ALEDO INDEPENDENT SCHOOL DISTRICT; A.I.S.D. Board of Trustees; and Allen Norman, Superintendent, Appellants,**

v.

**Ricky REESE, Appellee.**

No. 2–98–320–CV.

Court of Appeals of Texas, Fort Worth.

April 1, 1999.

Rehearing Overruled April 21, 1999.

Fanning, Harper & Martinson, Thomas P. Brandt, Mark D. Cronenwett, Dallas, for appellants.

Myers Law Firm, Randy S. Myers, Fort Worth, for appellee.

PANEL B: DAY, RICHARDS, and BRIGHAM, JJ.

## OPINION

SAM J. DAY, Justice.

This is an accelerated appeal in which Aledo Independent School District (A.I.S.D.), the A.I.S.D. Board of Trustees, and A.I.S.D. Superintendent Allen Norman (collectively, "Appellants") seek dissolution of a temporary injunction that requires Ricky Reese, a senior at Aledo High School, to be allowed to participate in school functions and attend regular classes. Reese was transferred from his regular classes to Aledo's alternative education program (AEP) after bringing a gun on to school property. Reese appealed the administration's decision to the 43rd District Court in Parker County. The trial court held a hearing and granted a temporary in-

junction that required Appellants to allow Reese to return to his regular classes at Aledo High School and attend all school functions.

Appellants raise seven issues on appeal. In their first issue, Appellants contend that the trial court's injunction is void because a decision by a school district to assign a student to AEP classes is unreviewable by a court of law. In light of our disposition of Appellants' first issue, we need not address their remaining assertions.

Because the trial court lacked jurisdiction to review the school district's decision to transfer Reese to an AEP program, we vacate the injunctive order.

## I. BACKGROUND

The facts in this case are primarily undisputed. On September 16, 1998, a Parker County Deputy Sheriff found a short-barrel, pump shotgun loaded with double "OO" buckshot in Reese's locked pickup truck, which was parked in the Aledo school parking lot. During questioning, Reese admitted that the gun was his and said that he had forgotten to take it out of his truck after a weekend hunting trip. Principal Lynn McKinney held a hearing two days later that was attended by Reese, his mother and father, and Reese's attorney. Following the hearing, McKinney issued a decision expelling Reese from the A.I.S.D. campus and prohibiting him from attending extracurricular activities for the remainder of the fall semester. McKinney also decided that beginning January 4, 1999, Reese would be allowed back on the campus from 5 p.m. to 9 p.m. to attend AEP classes but would still be barred from attending extracurricular activities and from coming on the campus during the school day.

On September 23, 1998, Reese appealed McKinney's decision to A.I.S.D. Superintendent Allen Norman. On October 2, 1998, Norman held a conference at which Reese, his parents, and Reese's attorney were present. Following the conference, Norman modified McKinney's decision and held that Reese was still prohibited from attending his regular daytime classes for the remainder of the fall semester, but would be permitted to attend evening AEP classes on the Aledo campus. Norman also decided that McKinney would hold a hearing during the first week of January 1999 to determine an appropriate educational placement for Reese.

Reese's attorney notified Norman that he wished to appeal Norman's decision to the A.I.S.D. Board of Trustees ("Board"). Norman faxed Reese's attorney a copy of Aledo's school policy regarding the procedure to appeal student complaints. This policy provides that a student must first bring his complaint to the A.I.S.D. principal. If the student disagrees with the principal's decision, he may appeal to the A.I.S.D. superintendent or the superintendent's designee. If the outcome of the student's conference with the superintendent or his designee is not satisfactory, the student may present his complaint to the Board at the next regularly scheduled meeting during the time provided for audience participation.

At the next Board meeting, during the time for public comment, several people spoke on Reese's behalf, including his attorney.[1] At the end of the meeting, the Board did not request that Reese's complaint be put on the agenda for a subsequent meeting. Pursuant to A.I.S.D. policy, the Board's inaction had the effect of upholding Norman's decision.

On October 22, 1998, Reese filed suit in district court seeking an injunction against A.I.S.D., the Board, and Norman that would permit Reese to return to his regular courses at Aledo High School. Reese alleged that his rights to due process under the state and federal constitutions had been violated because the Board had failed to grant him a full hearing to appeal Norman's decision, as required by section 37.006 of the Texas Education Code.[2] He also argued that Appellants' wrongful acts would cause him to be irrepa-

---

1. Although the Board imposed a five-minute time limit on each speaker's comments, Reese's attorney was allowed to address the Board for twelve minutes.

2. *See infra* Part II.A.

rably harmed, because "[o]nce gone, the 1998 fall semester of Ricky Reese's senior year is irretrievable...." The trial court agreed and granted the injunction.

On appeal, Appellants contend that the trial court's injunction should be dissolved because (1) Reese's transfer to AEP classes was not an expulsion, and (2) the trial court is statutorily prohibited from considering appeals from a school district's decision to assign a student to AEP classes.

## II. APPLICABLE LAW

Chapter 37 of the education code sets out the disciplinary consequences for specific conduct and the procedural due process entitled to a student who is punished under this chapter. This appeal involves section 37.006 ("Removal for Certain Conduct"), section 37.007 ("Expulsion for Serious Offenses"), and section 37.009 ("Conference; Hearing; Review").

### A. Section 37.006

Under section 37.006, a student who engages in certain conduct, including acts punishable as a felony, may be removed from class and transferred to AEP classes. *See* TEX. EDUC.CODE ANN. § 37.006 (Vernon Supp.1999). This section also provides that under certain circumstances, the school's decision to place the student in AEP classes may be appealed to the Board, and that decision may be appealed to the commissioner of education. *See id.* § 37.006(h)–(k).

■ Reese alleges that he was disciplined under subdivision (a)(1) of section 37.006 (engaging in conduct punishable as a felony), and thus was entitled to appeal Norman's decision as provided in this section. However, the record indicates that Reese was not punished under section 37.006, but rather under section 37.007(e). Both the letter notifying Reese of his transfer to AEP classes and Norman's testimony at the hearing made it clear that Reese was disciplined for violating the rule prohibiting students from bringing firearms onto campus, not for engaging in conduct punishable as a felony. Because Norman's decision was based on section 37.007(e), Reese had no right to avail himself of the appellate remedies provided in section 37.006.

### B. Section 37.007(e)

Section 37.007(e) is Texas' codification of the Federal Gun–Free Schools Act of 1994. *See* 20 U.S.C. § 8921 (West Supp.1998); TEX. EDUC.CODE ANN. § 37.007(e) (Vernon Supp. 1999) ("the Texas Gun Free Schools Act"). Subsection (e) provides that:

In accordance with federal law, a local educational agency, including a school district, home-rule school district, or open-enrollment charter school, shall expel a student who brings a firearm, as defined by 18 U.S.C. Section 921, to school. The student must be expelled from the student's regular campus for a period of at least one year, except that:

(1) the superintendent or other chief administrative officer of the school district or of the other local educational agency, as defined by 20 U.S.C. Section 2891, may modify the length of the expulsion in the case of an individual student;

... and

(3) the district or other local educational agency may provide educational services to an expelled student ... in an alternative education program as provided in Section 37.008.

TEX. EDUC.CODE ANN. § 37.007(e) (Vernon Supp.1999) (footnote omitted).

### C. Section 37.009

Section 37.009 outlines the procedures by which a student may appeal unsatisfactory disciplinary decisions rendered under Chapter 37, two of which are relevant to this appeal. Subsection (b) of section 37.009 provides:

(b) If a student's placement in an alternative education program is to extend beyond the end of the next grading period, a student's parent or guardian is entitled to notice of and an opportunity to participate in a proceeding before the board of trustees of the school district or the board's designee, as provided by policy of the board of trustees of the district. Any deci-

sion of the board or the board's designee under this subsection is final and may not be appealed.

*Id.* § 37.009(b) (Vernon 1996). Subsection (f) of section 37.009 provides in relevant part:

(f) Before a student may be expelled under Section 37.007, the board or the board's designee must provide the student a hearing at which the student is afforded appropriate due process as required by the federal constitution and which the student's parent or guardian is invited, in writing, to attend.... If the decision to expel a student is made by the board's designee, the decision may be appealed to the board. The decision of the board may be appealed by trial de novo to a district court of the county in which the school district's central administrative office is located.

*Id.* § 37.009(f) (Vernon Supp.1999).

On appeal, Reese argues that his transfer to AEP, which barred him from coming on the campus during regular classroom hours and from attending extracurricular activities, was an "expulsion" under 37.007(e). He thus concludes he was entitled to the procedural due process provided in subsection (f) of section 37.009, including a full hearing before the Board and review of the matter in district court.

Appellants concede the language of section 37.007(e) that allows the school district to provide educational services "to an *expelled* student in an alternative education program" is confusing. *Id.* § 37.007(e) (emphasis added). They also acknowledge that Norman stated in his letter assigning Reese to AEP classes that he was upholding Reese's "expulsion." However, Appellants contend Norman used this term only to be consistent with the statutory language of section 37.007(e) and Reese's transfer to AEP classes under this subsection was not a true expulsion. Appellants thus argue that section 37.009(b) governs the decision to transfer Reese, which renders the Board's decision final and unreviewable by a court of law. Based on this statutory provision, Appellants conclude the trial court's order is void because it had no jurisdiction to consider an appeal under subsection (b).

## III. STATUTORY CONSTRUCTION

The critical issue in this case is whether transfer to an AEP is an "expulsion" under section 37.007. Section 37.007 does not define "expulsion" or "AEP" and there are no Texas decisions expressly construing these terms in this context.

■ When the court is confronted with a question of statutory construction, it must first determine whether the statute is ambiguous. *See Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex.1983). If the meaning of the statute is clear and unambiguous, extrinsic aids and rules of construction are inappropriate, and the statute should be given its common, everyday meaning. *See id.* However, when an apparent ambiguity exists, the court is to give the statute a reasonable construction in keeping with the legislative intent. *See City of Mason v. West Texas Utils. Co.*, 150 Tex. 18, 237 S.W.2d 273, 278 (1951).

■ Legislative intent must be determined from the entire act, not from isolated portions thereof. *See Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex.1990). Additionally, the court must consider the "consequences" that would follow from its construction of a statute and avoid absurd results. TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998); *see Sharp v. House of Lloyd, Inc.*, 815 S.W.2d 245, 249 (Tex.1991). As long as another reasonable interpretation exists, the reviewing court is bound to reject interpretations of a statute that defeat the purpose of the legislation. *See Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex.1996). Finally, this court must keep in mind that the Legislature is assumed to enact a statute with complete knowledge of the existing law and with reference to it. *See Acker*, 790 S.W.2d at 301.

## IV. APPLICATION OF THE LAW

■ In this case, Reese does not dispute the school district's authority to transfer him to AEP classes. Rather, he contends that the transfer was an expulsion that was made specifically appealable under section 37.009(f). We disagree for several reasons.

First, section 37.007(e) provides that a student who violates that subsection shall be expelled from the student's *regular campus* for a period of one year. Although Reese was not permitted on campus during regular school hours, he was allowed on the campus five nights a week to attend AEP classes. Thus, notwithstanding Norman's use of the term "expulsion," Reese was not "expelled from the ... regular campus" under section 37.007(e). The due process provisions of section 37.009(f) apply only to expulsions made pursuant to the statutory authority granted in section 37.007, and thus are inapplicable in this case. *See* TEX. EDUC.CODE ANN. § 37.009(f).

In addition, at least one federal court and one state court have implicitly held that transfer of a student from his regular classes into AEP classes does not constitute an expulsion. *See Nevares v. San Marcos Consol. Ind. Sch. Dist.*, 111 F.3d 25, 26 (5th Cir. 1997) ("[AEP] is maintained by Texas schools for those students whose violations of the law or the school's code of conduct fall short of triggering suspension or expulsion, but who for reasons of safety and order must be removed from the regular classroom."); *Sutton v. Katy Ind. Sch. Dist.*, 961 S.W.2d 216, 217–18 (Tex.App.—Houston [1st Dist.] 1997, no writ) (noting that student who violated school's controlled substance policy was given option of AEP attendance instead of expulsion).

Perhaps most importantly, although section 37.007(e)(3)'s use of the term "expelled student" does lend confusion to this issue, the nomenclature used throughout the remainder of Chapter 37 repeatedly distinguishes between "expulsions" and AEP placement, and makes it clear that the Legislature did not intend for a student's assignment to AEP classes to be construed as an expulsion.[3] Furthermore, to hold otherwise would put subsections (b) and (f) of section 37.009 in direct conflict with each other—one directing that the Board's decision to uphold the student's transfer to AEP was unreviewable by a court of law, and the other providing that the same decision was appealable by trial *de novo* to district court. TEX. EDUC. CODE ANN. § 37.009(b), (f). This construction would lead to an absurd result and would disregard the clear intent of the Legislature. We thus hold that Reese's transfer to AEP classes under section 37.007(e) was not an "expulsion" that triggered the statutory review provisions of section 37.009(f).

■ Because Reese's transfer was not an expulsion, review of Norman's decision is governed by section 37.009(b). This section provides that if the student's placement in AEP classes extends beyond the next grading period, he is entitled to participate in a proceeding before the Board or the Board's designees, as provided by Board policy. *See id.* § 37.009(b). Although Appellants contend there is no evidence in the record to prove that Reese's transfer extended past the next grading period, Appellants themselves offered into evidence the A.I.S.D. student handbook, which provides that grades are issued at six-week intervals. Consequently, Reese was entitled to appeal Norman's decision to the Board, as provided by

---

3. *See, e.g.,* TEX. EDUC.CODE ANN. § 37.001 (Vernon Supp.1999) ("Student Code of Conduct") (providing that student code of conduct must specify (1) conditions that authorize administration to transfer a student to an AEP and (2) conditions under which a student may be suspended or expelled); *id.* § 37.002(d) (Vernon 1996) ("Removal by Teacher") ("A teacher shall remove from class and send to the principal for placement in an alternative education program or for expulsion, as appropriate, a student who engages in conduct described under Section 37.006 or 37.007."); *id.* § 37.006 (Vernon 1996 & Supp. 1999) ("Removal for Certain Conduct") (providing that students who engage in certain conduct, except as provided in section 37.007(a)(3), (b), or (d), must be removed from the classroom and *placed in an alternative education program;* subsections (a), (b), and (d) of 37.007 provide that where the student has engaged in certain acts, he shall be *expelled*); *id.* § 37.007(c) ("Expulsion for Serious Offenses") ("A student may be expelled if the student, while placed in an alternative education program for disciplinary reasons, continues to engage in serious or persistent misbehavior that violates the district's student code of conduct."); *id.* § 37.019 (Vernon 1996) ("Emergency Placement or Expulsion") (providing that principal or designee may immediately place student in AEP for disruptive conduct and may immediately expel student to protect persons or property from imminent harm); *id.* § 37.020 ("Reports Relating to Expulsions and Alternative Education Program Placements") (providing that school districts must annually report AEP placements and expulsions).

Board policy. *See id.* The record reflects that the A.I.S.D. Board acted in conformance with its policy in reviewing Reese's complaint,[4] and chose to uphold Norman's decision to transfer Reese to AEP classes.

Subsection 37.009(b) expressly states that the Board's decision under this subsection is final and may not be appealed. Therefore, the trial court had no jurisdiction over this case and thus no authority to consider

Reese's appeal. Accordingly, we hold that its order granting the temporary injunction is void. We vacate the trial court's order and dismiss this case.

4. A.I.S.D. policy provides that after appealing an unsatisfactory decision to the principal and superintendent, the student may present his complaint to the Board at the next regular meeting during the time provided for audience participation. If the board does not request that the matter raised during the public comment section be put on the agenda for a subsequent meeting, the outcome of the student's hearing with the superintendent is automatically upheld.