

**IN THE**
**COURT OF APPEALS**
**SECOND APPELLATE DISTRICT OF TEXAS**
**AT FORT WORTH**

———————————————

No. 02-20-00067-CV

———————————————

NORTHWEST INDEPENDENT SCHOOL DISTRICT, Appellant

V.

K.R. AND B.R., INDIVIDUALLY AND AS PARENTS AND NEXT FRIENDS OF
C.R., A MINOR CHILD, Appellees

On Appeal from the 153rd District Court
Tarrant County, Texas
Trial Court No. 153-315355-20

Before Sudderth, C.J.; Gabriel and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION

K.R. and B.R., Individually and as Parents and Next Friends of C.R., a minor child and student, filed suit challenging Northwest Independent School District's assignment of C.R. to an alternative school and its dismissal of her from the drill team after what was alleged to be marijuana was found in her car in a high school parking lot. In this accelerated appeal,[1] Northwest ISD complains of the denial of its plea to the jurisdiction. Because the disciplinary decision is not appealable and the constitutional claims are not viable, the trial court lacked jurisdiction to hear the case. Therefore, we reverse the denial of Northwest ISD's plea to the jurisdiction and render judgment dismissing Parents' claims.

### II. BACKGROUND

On February 14, 2020, a canine-assisted search team found a substance alleged to be marijuana in C.R.'s car, which was located in the parking lot of Eaton High School, a part of Northwest ISD. C.R. contends that she was not aware of the presence of the drug and had no intent to bring marijuana onto the campus.[2] Rather, she alleges that the vehicle in which it was found had not been cleaned since it was purchased from an individual two months prior to the search and that "the most likely

---

[1]*See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8); Tex. R. App. P. 28.1.

[2]C.R. also contends that she took a drug test on February 15, and the results were negative. She attached a copy of the test results to her pleadings.

explanation for this material being under a back seat of the vehicle was that it was there when they purchased it."

Northwest ISD adheres to a "zero tolerance" policy. As a result, C.R. was assigned to nine weeks in Northwest ISD's Disciplinary Alternative Education Program (DAEP), she lost her place on the school drill team, her access to communication accounts as a drill team officer was revoked for the remainder of the year, and she was deemed ineligible to try out for a position on the drill team for the 2020–2021 school year. Placement in DAEP requires that students serve an out-of-school suspension for three days before reporting to the program. C.R. served the suspension on February 14, 17, and 18. On February 18, 2020, Parents submitted a level one appeal of the DAEP placement.

C.R. was to report for a meeting at DAEP on February 20, 2020. Instead, Parents filed suit seeking a temporary restraining order and temporary injunction on the basis that Northwest ISD unconstitutionally applied their disciplinary policies by not considering certain mitigating factors, such as lack of intent and the student's disciplinary history, when making the decision to place C.R. in DAEP. Parents sought to enjoin Northwest ISD and its agents and employees from: (1) requiring C.R. to attend DAEP; (2) enforcing any policies which would exclude C.R. from the drill team for the 2019–2020 school year; (3) enforcing any policies which would exclude C.R. from participating in tryouts for the drill team for the 2020–2021 school year; and (4) destroying any evidence found in C.R.'s vehicle. Parents claimed that not

3

granting injunctive relief would cause irreparable harm because Northwest ISD's actions and policies violated the Texas Constitution by depriving C.R. of rights including freedom of speech, freedom of association, and procedural and substantive due process.

Northwest ISD filed a plea to the jurisdiction and response to the request for a temporary restraining order. In addition to arguing why injunctive relief was inappropriate, Northwest ISD contended that the trial court did not have jurisdiction because (1) Parents could not appeal disciplinary decisions pursuant to Chapter 37 of the Texas Education Code, and (2) Parents failed to plead constitutionally viable causes of action.

The trial court granted Parents' temporary restraining order and entered an order prohibiting Northwest ISD from (1) requiring C.R. to attend DAEP rather than Eaton High School; (2) enforcing any policies so as to exclude C.R. from participating in drill team during the 2019–2020 school year; and (3) destroying any evidence found in C.R.'s vehicle which formed a basis of Northwest ISD's disciplinary actions against her. In the same order, the trial court noted that the court had considered Northwest ISD's plea to the jurisdiction and concluded that it "does have jurisdiction to consider whether minor [] C.R.'s constitutional rights have been violated." Therefore, the plea to the jurisdiction was denied. This appeal followed.[3]

---

[3]After submission to this court, Northwest ISD's counsel filed a letter stating that its Board of Trustees had heard the level three appeal. "Following presentations

## III. DISCUSSION

In three issues on appeal, Northwest ISD contends that the trial court erred in denying its plea to the jurisdiction because the trial court lacked subject-matter jurisdiction over the alleged violations of the Texas Constitution and student disciplinary decisions. Parents respond that they "sought protection from the court system" to prevent the school district from violating its own policies as well as the Education Code. In addition, Parents state that they are permitted to seek judicial relief because Northwest ISD violated their constitutional rights. However, if the order denying the plea to the jurisdiction is reversed, they request the opportunity to replead.

### A. Standard of Review

A trial court's ability to hear a case lies in its subject-matter jurisdiction. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). "A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction." *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) (citing *Bland*, 34 S.W.3d at 554). A plea to the jurisdiction may be used to assert governmental immunity and defeat a

---

by the [Parents], the District's administration, and Board deliberations," the Board voted to modify the "Level Two Decision" and allow C.R. to try out for the 2020–2021 drill team. However, if she makes the drill team, C.R. may only fully participate in drill team activities after February 14, 2021. In addition, according to the letter, C.R. has successfully completed her DAEP assignment and will return to Eaton High School campus in the fall. While it is arguable that any issue regarding the DAEP assignment is moot, we will address the assignment because counsel's letter is not part of the appellate record. *See* Tex. R. App. P. 34.1.

court's subject-matter jurisdiction. *Id.* A trial court's ruling on a plea to the jurisdiction is reviewed de novo. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015).

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised, just as the trial court must do. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004); *Bland*, 34 S.W.3d at 555. If the evidence creates a fact question on the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the factfinder will resolve the question. *Miranda*, 133 S.W.3d at 227–28. But if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law. *Id.* at 228. The standard mirrors our review of summary judgments, where we take as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in the non-movant's favor. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009).

## B. Applicable Law

Chapter 37 of the Texas Education Code establishes the disciplinary consequences for specific conduct and the procedural due process to which any student punished under the chapter is entitled. *Aledo Indep. Sch. Dist. v. Reese*, 987 S.W.2d 953, 956 (Tex. App.—Fort Worth 1999, pet. denied). A student can be placed in DAEP, which is a disciplinary option without expulsion, if the student

6

possesses, uses, or is under the influence of an illegal controlled substance or dangerous drug as those terms are used in the Health and Safety Code. *Stephens v. Trinity Indep. Sch. Dist.*, No. 12-12-00094-CV, 2012 WL 5289346, at *2 (Tex. App.—Tyler Oct. 24, 2012, no pet.) (mem. op.).

The Texas Education Code provides for notice and various hearings and appeals. *See* Tex. Educ. Code Ann. § 37.009(a)–(b). "If school district policy allows a student to appeal to the board of trustees or the board's designee a decision of the campus behavior coordinator or other appropriate administrator, . . . the decision of the board or the board's designee is final and may not be appealed." *Id.* § 37.009(a). If a student's placement in DAEP is to extend beyond sixty days or the end of the next grading period, whichever is earlier, "a student's parent or guardian is entitled to notice of and an opportunity to participate in a proceeding before the board of trustees of the school district or the board's designee, as provided by policy of the board of trustees of the district." *Id.* § 37.009(b). Any decision of the board or the board's designee under this subsection is also "final and may not be appealed." *Id.*

Even if there is no jurisdiction to review complaints arising out of the statutory rights in Chapter 37 of the Texas Education Code, an appellate court has jurisdiction to determine whether the complained of action violates the student's constitutional rights. *Stephens*, 2012 WL 5289346, at *3. Suits for injunctive relief may be maintained against governmental entities to remedy violations of the Texas Constitution. *City of Elsa v. M.A.L*, 226 S.W.3d 390, 392 (Tex. 2007) (citing *City of*

7

*Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995)). But for a court to have jurisdiction of constitutional claims against a governmental entity, the constitutional claims must be "viable." *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011). This means that the claims "must be properly pleaded in order to be maintained, not that such claims must be viable on their merits to negate immunity." *Patel v. Tex. Dep't of Licensing & Reg.*, 469 S.W.3d 69, 77 (Tex. 2015). While sovereign immunity does not bar a suit to vindicate constitutional rights, immunity from suit is not waived if the constitutional claims are facially invalid. *Klumb v. Houston Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015).

## C. Application of Law to Facts

In their pleadings, Parents[4] state that they are "pursuing a grievance process within [Northwest] ISD, but by the time that process concludes, C.R. will have been deprived of her Constitutionally-protected liberty and property interests without due process." At the time the suit was filed, a level one appeal had already been submitted. Since the filing of the suit, level two and three appeals have occurred.

In addition to pursuing the grievance process, Parents allege that the disciplinary actions taken by Northwest ISD implicate various constitutional rights. First, they claim that Northwest ISD violated C.R.'s "right to free speech and freedom of association, as secured by Article I, Section 8 of the Texas Constitution" by

---

[4]We note, as did Northwest ISD in its brief, that the pleadings assert certain claims on behalf of "Plaintiffs" collectively.

8

"depriving her of access to the ability to contact other drill team members or to participate with others in planned events as a drill team officer." Second, they allege that Northwest ISD violated C.R.'s "rights to procedural and substantive due process, as secured by Article I, Section 19 of the Texas Constitution" by "failing and refusing to take into account mitigating factors, including but not limited to lack of intent, and by failing to provide appropriate due process before imposing the discipline of assignment to DAEP." With regard to their second constitutional claim, Parents further state that Northwest ISD "impinged, deprived, and/or improperly diminished" Parents' and C.R.'s (1) liberty interest in attending C.R.'s customary high school and in participating in extracurricular drill team activities and her normal classes; (2) liberty interest in C.R.'s good name and reputation; (3) property right in their monetary investment in drill team membership and participation; and (4) property interest in Northwest ISD's policies and procedures as set forth in the student handbook.

## 1. Education Code Claims

Because C.R. was assigned to DAEP, Section 37.009 of the Texas Education Code governs. *See* Tex. Educ. Code Ann. § 37.009. The section states that a disciplinary board's decisions are final and cannot be appealed. *See id.* § 37.009 (a), (b). "Texas courts have interpreted this section to mean just what it says—district and appellate courts have no jurisdiction to review the decision to place a student in DAEP." *Stephens,* 2012 WL 5289346, at *2. We agree and hold that the trial court

9

had no jurisdiction to consider C.R.'s claims as they relate to Northwest ISD's decision to place C.R. in DAEP. *See Flour Bluff Indep. Sch. Dist. v. R.S.*, No. 13-05-623-CV, 2006 WL 949968, at *2 (Tex. App.—Corpus Christi Apr. 13, 2006, no pet.) (mem. op.).

### 2. Constitutional Claims

#### a. Free Speech and Freedom of Association

To support their claims of violation of their right to free speech and freedom of association, Parents complain of C.R.'s inability to participate in certain drill team activities. Neither Parents nor C.R. makes any factual allegations that C.R. was engaged in public speech or was denied the ability to associate with members of the drill team.

The Texas Constitution provides in part that "[e]very person shall be at liberty to speak, write or publish his opinions on any subject, being responsible for the abuse of that privilege." Tex. Const. art. I, § 8. The Texas Constitution provides greater rights of free expression than its federal counterpart. *Davenport v. Garcia*, 834 S.W.2d 4, 10 (Tex. 1992). For speech to be protected, it must address a matter of public concern. *Alcorn v. Vaksman*, 877 S.W.2d 390, 401–02 (Tex. App.—Houston [1st Dist.] 1994, writ denied). Similarly, freedom of association for the purpose of advancing ideas and airing grievances is a fundamental liberty guaranteed by the First Amendment. *In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 375 (Tex. 1998).

However, students do not possess a constitutionally-protected interest in their participation in extracurricular activities. *Spring Branch I.S.D. v. Stamos*, 695 S.W.2d 556, 561 (Tex. 1985). More particularly, participation in drill team is not a First Amendment right. *Flour Bluff*, 2006 WL 949968, at *3. In light of the fact that C.R. does not have a right to drill team participation, her association with the team does not advance her constitutional rights. Therefore, neither C.R's freedom of speech nor her freedom of association is implicated by the disciplinary actions taken by the high school to remove her from the drill team.

### b. Procedural and Substantive Due Process

Parents claim that they have rights in (1) C.R.'s attendance at her normal and customary high school and classes; (2) their monetary investment in drill team; (3) C.R.'s good name and reputation; and (4) the policies and procedures in the school district's student handbook. They claim that these property rights were implicated and deserve the constitutional protection of due process.

First, we address the claim that C.R. has a right to attend her "customary high school." Students have a right to free public education, and when that right is implicated, due process may be used to protect against the deprivation of a student's access to education. *Stafford Mun. Sch. Dist. v. L.P.*, 64 S.W.3d 559, 562–63 (Tex. App.—Houston [14th Dist.] 2001, no pet.). However, transferring a student from regular classes to an alternative education program does not impact a protected property interest implicating due process concerns. *Id.* at 563.

11

Here, C.R. was not excluded from the educational process. Other than alleging that C.R. was not provided an education in her "customary high school," Parents have not otherwise alleged that she was excluded from the educational process for the days that she was in DAEP. Therefore, the allegations do not rise to the level of a property interest implicating due process concerns.

Second, aside from claiming freedom-of-speech and association violations due to C.R.'s removal from the drill team and revocation of her officer duties, Parents claim that they have a protected interest in their monetary investment in drill team. However, as set out above, there is no fundamental right to participate in extracurricular activities. *Spring Branch*, 695 S.W.2d at 561; *Flour Bluff*, 2006 WL 949968, at *3. Because C.R.'s interest in drill team participation is not a cognizable property interest, Parents' monetary investment in the drill team does not receive constitutional protection. *See NCAA v. Yeo*, 171 S.W.3d 863, 870 (Tex. 2005) (holding that student-athlete's claimed "interest in future financial opportunities" did not assert an interest protected by article I, section 19 of the Texas Constitution).

Third, Parents claim C.R.'s assignment to DAEP impinged her right to her good name and reputation. However, reputation alone is not entitled to due process protection. *Bd. of Trs. of Galveston Wharves v. O'Rourke*, 405 S.W.3d 228, 237–38 (Tex. App.—Houston [1st Dist.] 2013 no pet.). Only when it is coupled with a "more tangible interest such as employment" is it worthy of due process protection. *Id.* In the absence of any other deprivation of a protected property or liberty interest, a

12

student has no liberty interest in his reputation entitled to due process protection. *Stafford*, 64 S.W.3d at 564. Similarly, Parents' claim in C.R.'s good name and reputation, standing alone, is not a protected interest. *See Yeo*, 171 S.W.3d at 868 (noting that the "United States Supreme Court [*Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155, 1160–61 (1976)] has held that reputation alone is not a protected liberty or property interest").

Fourth, Parents claim C.R. has a protected interest in the policies and procedures listed in Northwest ISD's student handbook. Specifically, Parents state that "the applicable state statute and district policy require that consideration be given to 'intent or lack of intent,' as well as 'a student's disciplinary history,' as mitigating factors in any decision regarding removal to DAEP, 'regardless of whether the decision concerns a mandatory or discretionary action.'"

The Education Code specifically requires school districts to establish standards for student conduct and to specify the circumstances and conditions under which a student may be removed from a classroom and placed in an alternative education program. Tex. Educ. Code Ann. § 37.001; *Hankins v. P.H.*, 1 S.W.3d 352, 354 (Tex. App.—Corpus Christi 1999, pet. denied). In this case, the student handbook specifically states that "[i]n deciding whether to place a student in a DAEP," the administrator "shall take into consideration" certain things such as "[i]ntent or lack of intent at the time the student engaged in the conduct" and "[t]he student's disciplinary history." Despite this limiting language, judicial review of school district disciplinary

13

measures that do not rise to the level of expulsion is limited. *Hankins*, 1 S.W.3d at 354. Disciplinary actions involving mere placement in an alternative education program are not reviewable by a court of law. *Id.* As in *Hankins*, Parents have cited us to no cases in which a trial court has been held to have jurisdiction to review the disciplinary measures of a school district that do not rise to the level of expulsion, *see id.*, and we have found none.

Even in cases involving expulsion, being provided a hearing and the ability to present evidence of prior conduct or any mitigating circumstances has been held to be sufficient due process to satisfy the Fourteenth Amendment of the Constitution. *Galveston Indep. Sch. Dist. v. Boothe*, 590 S.W.2d 553, 557–58 (Tex. App.—Houston [1st Dist.] 1979, no writ). Here, even though there was no expulsion, Parents and C.R. were provided a full hearing which included level one, two, and three appeals.

Parents cite to *Hinterlong v. Arlington Independent School District* as a "zero-tolerance case which preceded the statutory requirement that intent be considered" and as an example of the level of due process required by this court but denied to C.R. No. 2-09-050-CV, 2010 WL 522641, at *3–4 (Tex. App.—Fort Worth Feb. 11, 2010, pet. denied) (mem. op.). In that case, we upheld the trial court's judgment for the school district and against the student on his due process claim because the school district "provided an escape mechanism in lieu of strict application of the zero tolerance policy–that is, Dr. Bernd testified that, if provided with any of the requested evidence, he would have reversed the expulsion decision." *Id.* at *2. However,

14

*Hinterlong* is inapplicable to this case. Indeed, *Hinterlong* was decided prior to the amendment to Section 37.001 of the Texas Education Code which required that a student code of conduct provide consideration to certain mitigating factors. *Id.*; *see* Tex. Educ. Code Ann. § 37.001(a)(4). And it failed to reach the question of whether there is a cognizable property interest in cases such as this one where there is no expulsion.[5] *Hinterlong*, 2010 WL 522641, at *2.

If in this claim Parents are alluding to the concept of procedural due process, they must show that there is a protected liberty interest at stake, and then the court may determine what process is due. *Stafford*, 64 S.W.3d at 563. The *Stafford* court recognized that because a student's transfer to an alternative education program did not implicate due process protection and a liberty or property interest was not taken, failure to notify the student of an appeals process did not impinge on any protected interest. *Id.*

In this case, Parents are aware of the policies and procedures and in fact have already moved through the appeals process afforded to C.R. Like in *Stafford*, no liberty or property interest has been implicated by Northwest ISD because it has afforded Parents and C.R. the ability to use those grievance methods as outlined in the student handbook.

---

[5]The court even noted that "the issue of whether a zero tolerance policy that provides no escape mechanism would violate due process [was] not before us." *Id.* at *2, n.4.

### 3. Right to Replead

In Parents' brief, they request the opportunity to replead in the event we reverse the trial court's ruling on Northwest ISD's plea to the jurisdiction. A party deserves a "reasonable opportunity to amend" unless the pleadings affirmatively negate the existence of jurisdiction. *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) (citing *Harris Cty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004)); *Miranda*, 133 S.W.3d at 226–27; *Cty. of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). As is the case with special exceptions, a pleader must be given an opportunity to amend only if it is possible to cure the pleading defect. *Koseoglu*, 233 S.W.3d at 840.

The *Koseoglu* court held that where jurisdictional defects are in fact curable, the plaintiff has the opportunity to replead. *Id.* Even though the *Koseoglu* court upheld the repleading standard, it ultimately found that the jurisdictional defects were not curable. *Id.* The court reasoned that allowing the plaintiff to replead and plead more facts in favor of his contract claim would not change the fact that the entity had immunity which deprived the court of subject-matter jurisdiction. *Id.*

Where a plea to the jurisdiction challenges the sufficiency of the plaintiff's pleadings to establish a waiver of governmental immunity, and thereby establish jurisdiction, we must determine whether the plaintiff has pled a facially valid constitutional claim. *Compton v. Port Arthur Indep. Sch. Dist.*, No. 09-15-00321-CV, 2017 WL 3081092, at *3 (Tex. App.—Beaumont July 20, 2017, no pet.) (mem. op.).

16

If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend. *Id.*

Here, Parents have complained of the assignment of C.R. to DAEP and the accompanying loss of her drill team privileges. As set out above, the disciplinary assignment is not appealable under the Education Code, and there is no fundamental right to participate in extracurricular activities.[6] In their briefs, Parents have not suggested how they would replead to give the trial court jurisdiction. If Parents were allowed to replead, more facts would not make the claims viable or change the law enacted by the legislature, thereby giving the trial court subject-matter jurisdiction to hear the case. As a result, Parents are not entitled to the opportunity to replead.

## IV. CONCLUSION

Because Northwest ISD's disciplinary decisions are not appealable under Chapter 37 of the Texas Education Code and Parents did not plead viable constitutional claims, the trial court did not have jurisdiction to hear this matter. Therefore, we reverse the trial court's order denying Northwest ISD's plea to the jurisdiction and render judgment dismissing Parents' claims.

---

[6]In addition, we are mindful of the fact that the Texas Supreme Court has quoted the following counsel of the United States Supreme Court to the trial courts and courts of appeal: "Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Yeo*, 171 S.W.3d at 870 (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104, 89 S. Ct. 266, 270 (1968)).

/s/ Dana Womack

Dana Womack
Justice

Delivered:  August 20, 2020